**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PARK MEDICAL PHARMACY, et al., <br><br>Petitioners, <br><br>v. <br><br>WESTERN PHARMACY GROUP LLC, et al., <br><br>Respondents. | Case No. 22-cv-466-MMA (BGS) <br><br>**ORDER: (1) DENYING PETITIONERS' PETITION AND MOTION TO CONFIRM IN PART AND VACATE IN PART ARBITRATION AWARD; (2) GRANTING RESPONDENTS' PETITION AND MOTION TO CONFIRM ARBITRATION AWARD; AND (3) CONFIRMING ARBITRATION AWARD** <br><br>[Doc. Nos. 1, 3, 9, 10] |
| WESTERN PHARMACY GROUP LLC, et al., <br><br>Cross-Petitioners, <br><br>v. <br><br>PARK MEDICAL PHARMACY, et al, <br><br>Cross-Respondents. | |

Petitioners and Cross-Respondents Park Medical Pharmacy; each of Park Medical's owner trusts through their trustees, Joseph E. Grasela, as Trustee of the Joseph E. Grasela Trust, dated November 6, 2000, the Joseph E. Grasela Trust, dated November 6, 2000, Mitchell J. Robins, individually and as Trustee of the John C. Grasela Trust, dated October 1, 2001, the John C. Grasela Trust, dated October 1, 2001, George R. Awad, as Trustee of the George and Mona Awad Family Trust, dated November 12, 2002, the George and Mona Awad Family Trust, dated November 12, 2002; and Robins & Associates (collectively, "Petitioners" or "Park Medical") petition the Court to confirm in part and vacate in part the award of a JAMS arbitrator pursuant to California Code of Civil Procedure Sections 1285, 1286.2(a)(1) and (a)(4), and 1287.4. *See* Doc. No. 1 ("Petition"). Respondents and Cross-Petitioners Western Pharmacy Group LLC, Matthew Grayson, Kevin Faris, and Kevin McCarthy (collectively, "Respondents" or "Western Pharmacy") oppose vacatur and cross-petition to confirm the arbitration award in its entirety pursuant to California Code of Civil Procedure Section 1285. *See* Doc. No. 3 ("Cross-Petition"). For the reasons set forth below, the Court **DENIES** Park Medical's Petition and Motion for Order Confirming in Part and Vacating in Part Arbitration Award and **GRANTS** Western Pharmacy's Cross-Petition and Motion for Order Confirming Arbitration Award.

## I. B<small>ACKGROUND</small>[1]

### A.   The Asset Purchase Agreement

"Beginning in 2015, Park Medical initiated efforts to sell its pharmacies . . . ." Doc. No. 10-4 at 8 ("Final Award") Ex. A. On February 9, 2016, Kevin Faris and Matthew Grayson "prepared a proposed term sheet for purchase of" one of Park Medical's stores. *Id.* "At all times material, [ ] Grayson and [ ] Faris have been members of Western [Pharmacy] . . . . Kevin McCarthy formerly was a member of the LLC." *Id.* at 6. After

---

[1] Except where otherwise noted, the facts contained herein are from the Arbitrator's Final Award, Doc. Doc. No. 10-4 at 8 ("Final Award") Ex. A, and are not to be construed as factual findings by this Court.

multiple rounds of negotiations, "[t]he transaction closed on December 15, 2017." *Id.* at 14. Western Pharmacy ultimately purchased seven pharmacies from Park Medical. *Id.* at 8. The "Asset Purchase Agreement that the parties signed [was] effective July 19, 2017." *See id.* at 12; *see also* Doc. No. 10-5 (the "APA") Ex. B.

"[Western Pharmacy] and Park Medical Pharmacy, with its shareholders, filed separate Demands for Arbitration on June 16, 2020." Final Award at 2. Western Pharmacy's "causes of action were set forth in a series of written demands that culminated in a Third Amended Demand filed on March 17, 2021, and alleging Intentional or Negligent Misrepresentation against Park Medical Pharmacy and Breach of Warranty against Park Medical and its shareholders—three family trusts of the company's principals." *Id.* at 3. "Claims against Mitchell Robins and Robins & Associates, P.C. were pleaded in a federal court complaint filed August 31, 2020" and "Park Medical's Breach of Guaranty claims against Messrs. Grayson, Faris, and McCarthy were pleaded in a draft complaint dated September 23, 2020, that was tendered [to the arbitrator] but not filed in federal court." *Id.*

The parties proceeded to arbitration before JAMS arbitrator Charles H. Dick, Jr. (the "Arbitrator"). *Id.* at 4, 40. The Arbitrator held a seven-day evidentiary hearing in October 2021. *See id.* at 2. On December 30, 2021, the Arbitrator issued an Interim Award. *Id.* at 5. "[Western Pharmacy] and Park Medical [filed] post-hearing briefs and replies requesting corrections and a recomputation of damages." *Id.* "[T]he case was deemed submitted for final resolution on February 17, 2022." *Id.* On March 28, 2022, the Arbitrator issued a Final Award. *Id.* at 40.[2]

---

[2] In its Petition, Park Medical notes that "[d]ue to a typographical error the Final Award indicates that it was entered on February 28, 2022. This is incorrect; the Final Award was not issued until March 28, 2022." Petition at 2 fn.2. Western Pharmacy similarly indicates the Award was issued on March 28, 2022. Cross-Petition at 2.

B.     The Arbitration Award

The Arbitrator determined that: (1) Western Pharmacy was "entitled to a Final Award in its favor on the claims of Negligent Misrepresentation, Breach of Warranty, and Breach of Contract against Park Medical Pharmacy; the George and Mona Awad Family Trust, dated November 12, 2002; the Joseph E. Grasela Trust, dated November 6, 2000; the John C. Grasela Trust, dated October 1, 2001" with Western Pharmacy's "aggregate damages of $6,245,000 plus $34,192 SPA 17-0002 reimbursement [ ] offset the parties' Escrow Account and the original Principal balance of the Secured Subordinated Promissory Note"; (2) Western Pharmacy's "claim against Park Medical Pharmacy for Fraud or Intentional Misrepresentation should be dismissed with prejudice"; (3) Western Pharmacy's "claims against Mitchell J. Robbins and Robins & Associates, A Professional Corporation, should be dismissed with prejudice"; (4) Park Medical was "entitled to a Final Award on its claim for Declaratory Relief against [Western Pharmacy] and Messrs. Matthew Grayson, Kevin Faris, and Kevin McCarthy, determining that after offset, [Western Pharmacy] owes Principal and Interest on the Subordinated Secured Promissory for $975,104.35"; (5) "[t]he Final Award should direct Park Medical Pharmacy to execute a Joint Release Instruction directing Citibank National Association to disburse all Escrow Funds; (6) "[a]s the prevailing party, [Western Pharmacy was] entitled to recover its attorney fees, costs, arbitration, and litigation expenses for $1,828,383"; and (7) "[t]he Application of Mitchell J. Robins and Robins & Associates, PC, for recovery of attorney fees and costs should be denied." *Id.* at 39–40.

Park Medical now petitions and moves the Court to vacate in part and confirm in part the Arbitrator's Award.  *See* Doc. Nos. 1, 10.  Western Pharmacy moves the Court to confirm the Arbitrator's Award in its entirety.  *See* Doc. No. 3, 9.

## II. LEGAL STANDARD[3]

"In general, judicial review of an arbitration award is extremely limited." *SingerLewak LLP v. Gantman*, 241 Cal. App. 4th 610, 615 (2015). "[A]n arbitrator's decision is not generally reviewable for errors of fact or law, whether or not such error appears on the face of the award and causes substantial injustice to the parties." *Moncharsh v. Heily & Blase*, 3 Cal. 4th 1, 6 (1992). California Code of Civil Procedure Section 1286.2 sets forth grounds for vacating an arbitration award. Section 1286.2 states, in pertinent part, that "the court shall vacate the award if the Court determines" that "(1) [t]he award was procured by corruption, fraud or other undue means" or that "(4) [t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted." Cal. Civ. Proc. Code § 1286.2(a)(1), (4). Pursuant to Section 1286.2(a)(1),

> an award may be vacated if the award is secured by corruption, fraud or other undue means. Fraud, as that term is used in section 1286.2, subdivision (a)(1), is that perpetrated by the arbitrator or a party. Only extrinsic fraud which denies a party a fair hearing may serve as a basis for vacating an award. (*Maaso v. Signer* (2012) 203 Cal.App.4th 362, 371–372 [136 Cal. Rptr. 3d 853]; *Pour Le Bebe, Inc. v. Guess? Inc.* (2003) 112 Cal.App.4th 810, 813, 827 [5 Cal. Rptr. 3d 442]; *Pacific Crown Distributors v. Brotherhood of Teamsters* (1986) 183 Cal.App.3d 1138, 1147, fn. 5 [228 Cal. Rptr. 645].) As to undue means, a Ninth Circuit panel has defined the term thusly: "Although the term has not been defined in any federal case of which we are aware, it clearly connotes behavior that is immoral if not illegal. See Black's Law Dictionary 1697 (Rev. 4th ed. 1968) ('Undue' means 'more than necessary; not proper; illegal,' and 'denotes something wrong, according to the standard of morals which the law enforces.' 'Undue influence' means any 'improper or wrongful constraint, machination, or urgency of persuasion whereby the will of a person is overpowered.')." (*A.G. Edwards & Sons, Inc. v. McCollough* (9th Cir. 1992) 967 F.2d 1401, 1403–1404; accord, *Pour Le Bebe, Inc. v. Guess? Inc.*, supra, 112 Cal.App.4th at p. 831.) Undue means can include representation of a party where an attorney is operating under a conflict of interest. (*Pour*

---

[3] The parties agree that the California Arbitration Act applies. *See* Petition at 6; Cross-Petition at 4.

> *Le Bebe, Inc.*, at pp. 813, 825–833.)  Undue influence occurs when there is bribery or intimidation of the arbitrator.  (*Id.* at p. 832.)

*Comerica Bank v. Howsam*, 208 Cal. App. 4th 790, 822–23 (2012).  Pursuant to Section 1286.2(a)(4),

> California courts have found that an arbitrator exceeds his powers when he (1) acts without subject matter jurisdiction, (2) decides an issue that was not submitted to arbitration, (3) arbitrarily remakes the contract, (4) upholds an illegal contract, (5) issues an award that violates a well-defined public policy, (6) issues an award that violates a statutory right, (7) fashions a remedy that is not rationally related to the contract, or (8) selects a remedy not authorized by law.  *See Jordan v. Cal. Dep't of Motor Vehicles*, 100 Cal. App. 4th 431, 443, 123 Cal. Rptr. 2d 122 (2002) (citing cases) (internal citations omitted).  "In other words, an arbitrator exceeds his powers when he acts in a manner not authorized by the contract or by law." *Id.*

*Johnson v. Gruma Corp.*, 614 F.3d 1062, 1069–70 (9th Cir. 2010).  "Arbitrators do not exceed their powers by reaching erroneous factual or legal conclusions on the merits of the parties' claims, even if the award causes substantial injustice to one of the parties." *Emerald Aero, LLC v. Kaplan*, 9 Cal. App. 5th 1125, 1138 (2017) (first citing *Richey v. AutoNation, Inc.*, 60 Cal. 4th 909, 916 (2015); then citing *Moncharsh*, 3 Cal. 4th at 6.

"The essence of arbitration is its freedom from the formality of ordinary judicial procedure.'"  *Greenspan v. LADT, LLC*, 185 Cal. App. 4th 1413, 1449 (2010) (quoting *Sapp v. Barenfeld*, 34 Cal. 2d 515, 520 (1949)).

* * *

## III. Discussion

Park Medical moves to vacate the Award in part on the grounds that the Arbitrator exceeded his powers and that the Award was procured through undue means. *See* Petition. The gravamen of Park Medical's Petition is that Western Pharmacy never presented or mediated any claim for "negligent misrepresentation by omission or breach of warranty based on any omission concerning inventory or accounts receivable information[,]" and that the Arbitrator was therefore acting outside of the scope of his power in ruling on these claims. *See id.* at 8. Instead, Park Medical urges that "[t]he sole basis for Western's claims throughout the arbitration . . . was two intentional and affirmative misrepresentations regarding net ordinary income and gross margin and a claim for breach of warranty premised on SPA 17-002 and the same two alleged intentional misrepresentations." Doc. No. 10-1 at 23 (emphasis and citations omitted). On this basis, Park Medical seeks to (1) vacate the finding of liability against Park Medical for negligent misrepresentation by omission and breach of warranty by omission for failure to disclose "[(a)] "Park Medical's use of estimated inventory figures, rather than figures from an automated system, in connection with its financial reports during the fourth quarter of 2016 and early 2017; and [(b)] that Park Medical 'had difficulty determining the company's accounts receivable'" in the first quarter of 2017"; (2) vacate the award of damages in the amount of $6,245,000 based upon those same claims; (3) vacate the award of attorneys' fees and costs in the amount of $1,828,383 based upon Western Pharmacy's prevailing party status against Park Medical on those same claims; and (4) remand the case to JAMS for further proceedings, solely to determine the appropriate amount of fees and costs to be awarded Park Medical as the prevailing party. Petition at 3, 16–17.

The Court considers each of Park Medical's arguments in turn, and concludes that Park Medical has failed to raise grounds upon which the Court can vacate the Award.

A. **Motion to Confirm in Part and Vacate in Part**

1. *Waiver*

As an initial matter, Western Pharmacy urges that many of Park Medical's arguments in the instant motion have been waived by Park Medical's failure to raise them with the Arbitrator. Park Medical urges that "JAMS Rules afforded Petitioners no procedural ability to attack the Arbitrator's disregard for his limited authority—JAMS Rules only allow a party to seek correction of awards based on 'computational, typographical or other similar error[s].'" Doc. No. 16 at 6 (quoting JAMS Rule 24(j)) (additional citation omitted). The Court is not convinced these arguments were waived. JAMS Rule 24(j) states the following:

> Within seven (7) calendar days after service of a Partial Final Award or Final Award by JAMS, any Party may serve upon the other Parties and on JAMS a request that the Arbitrator correct any computational, typographical or other similar error in an Award (including the reallocation of fees pursuant to Rule 31(c) or on account of the effect of an offer to allow judgment), or the Arbitrator may sua sponte propose to correct such errors in an Award. A Party opposing such correction shall have seven (7) calendar days thereafter in which to file any objection. The Arbitrator may make any necessary and appropriate corrections to the Award within twenty-one (21) calendar days of receiving a request or fourteen (14) calendar days after his or her proposal to do so. The Arbitrator may extend the time within which to make corrections upon good cause. The corrected Award shall be served upon the Parties in the same manner as the Award.

Doc. No. 13-5 at 30 ("JAMS Rules & Procedures") Ex. 3. The plain language reading of JAMS Rule 24(j) rule is that, after service of a Pretrial Final Award or Final Award, the parties are limited to requesting corrections of "any computational, typographical or other similar error." *See id.* Moreover, the Court notes that waiver occurs when a party "sit[s] idle through an arbitration procedure and then collaterally attack[s] that procedure on grounds not raised before the arbitrators when the result turns out to be adverse." *Marino v. Writers Guild of Am., E., Inc.*, 992 F.2d 1480, 1484 (9th Cir. 1993). The record does

not show waiver. Accordingly, it appears Park Medical did not waive the instant arguments. The Court therefore considers Park Medical's arguments on the merits.

### 2. Arbitrability and Jurisdiction

Park Medical argues that "[t]he Award's omission rulings violate specific restrictions in the parties' arbitration agreement providing that detailed notice of any claimed breach of warranty, as well as nonbinding mediation of any 'controversy or claim' are mandatory conditions precedent to any arbitration proceeding." Doc. No. 10-1 at 20–21 (emphasis omitted). Additionally, Park Medical argues that "[t]he Award also violates the parties' submissions for arbitration because neither Park Medical nor Western ever submitted the claims the Arbitrator ultimately ruled upon to arbitration." *Id.* at 23.

Specifically, Park Medical points to Sections 10(g) and 17(n) of the APA, arguing that "[b]ecause Western never furnished Park Medical the required notice of a breach of representation and warranty claim premised on non-disclosure of inventory or accounts receivable information, and the parties never mediated such a claim, no right to arbitrate these claims was ever triggered and the Arbitrator exceeded his contractual powers by ruling on such claims." *Id.* at 22.

Western Pharmacy argues that all of Park's Medical's arguments regarding Section 10 and 17 of the APA lack merit and that "the Court need not even reach Park Medical's arguments regarding the sufficiency of Western's pleading (or any other attacks on the Arbitrator's jurisdiction over Western's successful claims) because the parties specifically delegated to the Arbitrator all issues regarding arbitrability and jurisdiction." Doc. No. 13 at 6, 10–16.

Section 10 of the APA sets forth the indemnification obligations of the parties; Section 10(g) sets forth the indemnification procedure. APA at 34–38. Section 17(n) sets forth the contractually-agreed upon procedure for dispute resolution, requiring the parties to first attempt to settle "any dispute or controversy" through "direct discussion", then "endeavor to settle the dispute by nonbinding mediating administered by JAMS,

Inc.", and as a final resort, settle "[a]ny remaining unresolved controversy or claim" by "binding arbitration." *Id.* at 43–44.

Section 10(g) of the APA provides as follows, in relevant part:

> (g) <u>Indemnification Procedure.</u>
>
> (i) If a party seeking indemnification ("Claiming Party") seeks indemnification pursuant to this Section 10 or if such Claiming Party receives a claim or demand from a third party (a "Third Party Claim") for which the Claiming Party may be entitled to such indemnification, such Claiming Party shall promptly notify the Indemnifying Party in writing of its discovery of such claim or demand, (a "Notice of Claim"). The Notice of Claim shall state that the Indemnified Party has paid or incurred Losses for which such Indemnified Party is entitled to indemnification pursuant to this Section 10, and specify in reasonable detail the basis for such claim. Notwithstanding anything to the contrary herein, no delay by a Claiming Party in providing a Notice of Claim or failure to follow the other protocols set forth above shall relieve the Indemnifying Party of its indemnification obligations under this Agreement except if and to the extent the Indemnifying Party is adversely affected by such delay or failure.

*Id.* at 36–37.

The relevant portion of Section 17(n) of the APA provides as follows:

> (n) <u>Mediation/Arbitration.</u> Notwithstanding Section 17(a) above, the parties acknowledge that any dispute or controversy concerning this Agreement or the rights and obligations of the parties herein, including whether or not such dispute or controversy is arbitrable, or any breach of the representations, warranties, covenants or agreements under this Agreement, shall be determined in accordance with the following provisions:
>
> (i) Upon the occurrence of any dispute or controversy that cannot be settled through direct discussions, the parties shall endeavor to settle the dispute by nonbinding mediation administered by JAMS, Inc. ("JAMS"), before resorting to arbitration. The parties shall agree to a mediator and if they are unable to agree, JAMS shall select a mediator who may be rejected by the parties only for bias. The parties shall notify the mediator in writing of the existence of a dispute and the

> mediator shall have thirty (30) days from receipt of notification to meet with the parties and help them resolve the dispute, unless the parties mutually agree to an extension of the deadline. The cost of mediation (but not the attorneys' fees of the respective parties) shall be borne equally between the parties. No party may compel arbitration before the end of the thirty (30) day period.
>
> (ii) Any remaining unresolved controversy or claim arising out of or relating to this Agreement shall be settled by binding arbitration, which shall constitute the sole and exclusive remedy. Either party desiring to institute an arbitration proceeding hereunder shall send written notice thereof, briefly describing the nature of the matter to be arbitrated, to JAMS with a copy to the other party. Any such arbitration proceeding shall be carried out in accordance with the following provisions:
>
>> (A) The arbitration proceeding shall be conducted pursuant to the JAMS Comprehensive Arbitration Rules & Procedures ("JAMS Rules"), in effect at the time a demand for arbitration is made. To the extent that there is any conflict between the JAMS Rules and these arbitration provisions, these provisions shall govern and determine the rights of the parties.

*Id.* at 43–44.

Nothing in Sections 10(g) or 17(n) allows this Court to find that the Arbitrator exceeded the scope of his contractual authority. In essence, Park Medical asks this Court to interpret the APA as imposing a requirement that each individual claim, and its precise supporting theory, proceed through notice, direct discussion, mediation, and finally arbitration. The Court finds no support for this in the APA. To the contrary, the first time the APA uses the term "claim" in Section 17(n) is in the final clause discussing arbitration, whereas the earlier clauses refer more broadly to a "dispute or controversy"; similarly, Section 10(g) requires a claiming party to notify an indemnifying party "in writing of its discovery of such claim or demand" and to "specify in reasonable detail the basis for such a claim." *See id.* at 36–37, 43–44.

Park Medical urges that cases like *Harshad & Nasir Corp. v. Global Sign Systems, Inc.,* 4 Cal. App. 5th 523 (2017), *Emerald Aero, LLC v. Kaplan,* 9 Cal. App. 5th 1125

(2017), and *Pacific Crown Distribs. v. Bhd. Of Teamsters*, 183 Cal. App. 3d 1138 (1986), lend support to their arguments. However, these cases are inapposite in the instant case, where the Arbitrator explicitly found that "the last Demand asserted a negligence claim as a lesser included offense of the alleged fraudulent conduct by Park Medical." Final Award at 23.

Accordingly, the Court finds that Park Medical's arguments regarding arbitrability and jurisdiction provide no basis for vacatur.

### 3. *Violation of JAMS Rules*

Park Medical argues that "[t]he Award violates the JAMS Comprehensive Rules of Arbitration, which unequivocally prohibit arbitrators from considering claims not contained within a parties' notice of claims[.]" Doc. No. 10-1 at 25. Western Pharmacy argues there was no violation of JAMS Rules 9 or 10. *See* Doc. No. 13 at 23. JAMS Rule 9(a) provides rules regarding notice of claims:

> Each Party shall afford all other Parties reasonable and timely notice of its claims, affirmative defenses or counter-claims. Any such notice shall include a short statement of its factual basis. No claim, remedy, counterclaim or affirmative defense will be considered by the Arbitrator in the absence of such prior notice to the other Parties, unless the Arbitrator determines that no Party has been unfairly prejudiced by such lack of formal notice or all Parties agree that such consideration is appropriate notwithstanding the lack of prior notice.

JAMS Rules & Procedures at 13. JAMS Rule 10 provides rules for changes of claims:

> After the filing of a claim and before the Arbitrator is appointed, any Party may make a new or different claim against a Party or any third party that is subject to Arbitration in the proceeding. Such claim shall be made in writing, filed with JAMS and served on the other Parties. Any response to the new claim shall be made within fourteen (14) calendar days after service of such claim. After the Arbitrator is appointed, no new or different claim may be submitted, except with the Arbitrator's approval. A Party may request a hearing on this issue. Each Party has the right to respond to any new or amended claim in accordance with Rule 9(c) or (d).

*Id.* at 14.

The Arbitrator concluded that "[t]he initial Demand for Arbitration . . . alleged Fraud, but it was not until March 17, 2021, that a claim of negligent misrepresentation was filed against Park Medical. . . . The Third Demand relates back to June 2020 and should be deemed as timely filed with the applicable, two-year period of limitation." Final Award at 23. In doing so, the Arbitrator necessarily considered the scope of the pleaded allegations, noting that "[a]pplication of the [relation back] rule hinges on whether a party has been put on notice of facts against which a defense must be mounted" and that "[t]he original Demand for Arbitration and each of the succeeding amendments posit liability on misstatements of Park Medical's financial performance." *See id.*

"An arbitrator's interpretation of JAMS Rules may be judicially reviewed on the merits where the parties have explicitly and unambiguously agreed that the arbitration award is subject to that scope of review." *Greenspan*, 185 Cal. App. 4th at 1452 (citing *Cable Connection, Inc. v. DIRECTV, Inc.*, 44 Cal. 4th 1334, 1355, 1361, 1364–65 & fn.23 (2008)). In the instant case, the parties did not "explicitly and unambiguously" agree to expanded review. *See* APA at 43–44.

Accordingly, this is not a ground for vacatur.

### 4. Notice of Negligent Misrepresentation Theory

Park Medical argues that "[a]ny claim by Western that negligent misrepresentation by omission is simply a type of negligent misrepresentation, and therefore was submitted by Western for arbitration, must be rejected" because (1) " no claim for negligent misrepresentation by omission appears to even exist under California law, except perhaps in instances presenting foreseeable and substantial risk of physical harm to a third person"; and (2) Western Pharmacy was required to plead any misrepresentation claims "with particularity[.]" Doc. No. 10-1 at 26–27 (citations, quotation marks, and emphasis omitted). Western Pharmacy argues that Park Medical had full and fair notice of Western Pharmacy's successful negligent misrepresentation theory. Doc. No. 13 at 24.

In essence, Park Medical is asking the Court to reassess the Arbitrator's legal

conclusion that "California law recognizes a deceit claim for negligent omission or concealment of a material fact." *See* Final Award at 19. The Court can find no legal basis to do so.[4] *Emerald Aero*, 9 Cal. App. 5th at 1138 ("Arbitrators do not exceed their powers by reaching erroneous factual or legal conclusions on the merits of the parties' claims, even if the award causes substantial injustice to one of the parties.") (citations omitted).[5]

### 5. *Limitation of Liability*

Park Medical argues that "[t]he award violates the APA's limitation of liability provision through the award of $6.245 million for breach of the representation and warranty" because "[t]he APA specifically and clearly limits damages for any such breach to $4.5 million." Doc. No. 10-1 at 29 (citing Ex. B. § 10(d)). Western Pharmacy argues that the cap in "Section 10(d) does not apply to facts that sound in fraud and negligent misrepresentation is a species of fraud." Doc. No. 13 at 30 (citing Ex. B. § 10(d)) (additional citation omitted).

The Arbitrator concluded that Western Pharmacy was entitled to $6.245 million in damages for negligent misrepresentation and breach of warranty. Final Award at 27–30, 33, 39–40. In making the calculation, the Arbitrator stated that "[t]he measure of damages in a California claim for deceit is the difference between the 'actual value of that which the defrauded person parted and the actual value of that which he received'" and "[t]he measure of damages for breach of contract is 'the amount that will compensate the party aggrieved for all the detriment proximately caused' by the breach. *See id.* at 27 (citations omitted). The Arbitrator did not parse the total damage award by claim. *Id.* at 27–30. The APA states, in relevant part, "nothing in this Agreement shall be deemed to

---

[4] The Court is similarly unpersuaded by Park Medical's argument that Western Pharmacy was required to plead any misrepresentation claims "with particularity." *See Greenspan v. LADT, LLC*, 185 Cal. App. 4th 1413, 1449 (2010) (quoting *Sapp v. Barenfeld*, 34 Cal. 2d 515, 520 (1949)) ("The essence of arbitration is its freedom from the formality of ordinary judicial procedure.'").

[5] The Court takes no position on the existence or scope, if any, of a claim for negligent misrepresentation by omission under California law.

limit any Party's recovery for Losses *resulting from* fraud or intentional misrepresentation." APA at 36 (emphasis added). Based on the record and the language in the APA, the Court cannot find the Arbitrator exceeded his powers; Park Medical's challenge to the Arbitrator's interpretation of the APA and calculation of damages is not a basis for vacatur.

### 6. *Fraud or Other Undue Means*

Park Medical argues that "[t]he Arbitrator not only exceeded his powers by ruling on claims of concealment after the arbitration hearing and post-hearing briefing were completed, but also failed to ensure a fair hearing such that the Award was procured by 'fraud or other undue means' under Code of Civil Procedure Section 1286.2(a)(1)." Doc. No. 10-1 at 24 (citations omitted). Park Medical also argues that the Arbitrator "issued an award procured by 'fraud or other undue means'" by violating JAMS Rules 9(a) and 10 by "considering claims not contained within a parties' notice of claims," and "ignor[ing] JAMS rules providing procedural safeguards concerning the addition of any 'new or different' claim" by "request[ing] 'short comments' within a week from the date of his email" instead of "allowing Park Medical to submit a response and any affirmative defense within 14 days." *Id.* at 25–26 (first citing *Emerald Aero*, 9 Cal. 5th at 1141–42; then citing Cal. Code Civ. Pro. §1286.2(a)(1), (4)).

"Fraud, as that term is used in [Section 1286.2(a)(1)], is that perpetrated by the arbitrator or a party. Only extrinsic fraud which denies a party a fair hearing may serve as a basis for vacating an award." *See Comerica*, 208 Cal. App. 4th at 822–23 (citations omitted). Undue means, as used in Section 1286.2(a)(1), "clearly connotes behavior that is immoral if not illegal." *Id.* (citations omitted).

The record does not support Park Medical's claim that the Award was procured by undue means.

### 7. *Summary*

Park Medical fails to raise grounds upon which the Court can vacate the award of liability and damages against Park Medical for negligent misrepresentation by omission

and breach of warranty by omission. Accordingly, there is also no basis for the Court to vacate the award of attorneys' fees and costs or for the Court to remand the case to JAMS. The Court therefore **DENIES** Park Medical's Motion to Confirm in Part and Vacate in Part the Arbitration Award.

**B.     Motion for Confirmation of Final Arbitration Award**

Western Pharmacy moves pursuant to California Code of Civil Procedure Section 1280, *et seq.* for (1) confirmation of the Award; (2) reasonable attorneys' fees and costs; and (3) judgment in favor of Western Pharmacy in conformance with the Award. *See* Doc. No. 9.

Under California law, "the court shall confirm the award as made, whether rendered in this state or another state, unless in accordance with this chapter it corrects the award and confirms it as corrected, vacates the award or dismisses the proceeding." Cal. Code Civ. Proc. § 1286. Because the Court has not corrected or vacated the Award, or dismissed the proceeding, the Court must confirm the Award. *See id.* Additionally, "[i]f an award is confirmed, judgment shall be entered in conformity therewith." Cal. Code Civ. Proc. § 1287.4.

***

## IV. Conclusion

For the foregoing reasons, the Court **DENIES** Park Medical's Petition and Motion to Confirm in Part and Vacate in Part the Award. *See* Doc. Nos. 1, 10. The Court further **GRANTS** Western Pharmacy's Cross-Petition and Motion for Confirmation of Final Arbitration Award. *See* Doc. Nos. 3, 9. The Court **CONFIRMS** the Arbitrator's Final Award and **DIRECTS** the Clerk of Court to enter judgment in accordance with the Award. Doc. No. 10-4 at 39–40.

Western Pharmacy has also requested attorneys' fees and costs in the Cross-Petition, but has not specified in what amount, nor supported the request with appropriate evidence. *See* Doc. No. 3 at 7. Federal Rule of Civil Procedure 54(d) permits a party to move for attorneys' fees and costs. Fed. R. Civ. P. 54(d). Western Pharmacy may file a properly supported motion for attorneys' fees and costs no later than **December 9, 2022**.

**IT IS SO ORDERED**.

Dated: November 9, 2022

HON. MICHAEL M. ANELLO
United States District Judge